[No. 24045.   Department Two.   November 30, 1932.]

HARRIET E. WASHINGTON, *Appellant*, v. THE CITY OF SEATTLE *et al., Respondents.*[1]

[1]Reported in 16 P. (2d) 597.

*Lund & Lund,* for appellant.

*A. C. Van Soelen* and *E. I. Jones,* for respondents.

STEINERT, J.—This action is the result of a collision between an automobile bus and a truck, upon the streets of the city of Seattle. Plaintiff was a passenger for hire upon the bus. A trial before the court, sitting with a jury, resulted in a verdict and judgment for the defendants. Plaintiff has appealed.

On November 14, 1930, one of the city's buses, operated in connection with the city's railway system, and on which appellant was then a passenger, was traveling west along east Sixty-fifth street, in the city of Seattle. At the same time, a truck, owned and operated by the respondent Claseman, was traveling south along Twelfth avenue N. E. The two streets intersect at right angles. Under a municipal ordinance of the city, a stop sign had been erected on Twelfth avenue N. E., one hundred feet north of east Sixty-fifth street, requiring traffic on Twelfth avenue N. E. to come to a stop before entering the intersection. Another ordinance made it unlawful to drive a vehicle across any

street intersection within the city limits at a rate of speed faster than fifteen miles per hour.

The truck entered the intersection without having stopped at the stop sign, and the two vehicles collided in the southwest quadrant of the intersection, the truck striking the bus on its right side near the front. The appellant, who was holding a child in her lap at the time, was thrown forward against the seat in front of her, and sustained injuries for which this action was brought. There was evidence to the effect that the bus entered the intersection at a rate of speed of from thirty to thirty-five miles per hour; also, that the northeast corner of the intersection was an obstructed one, as defined by our vehicle operation act. Additional facts will be suggested in the course of our opinion.

Appellant's first assignment of error is to the court's refusal to sustain her challenge, for cause, to one of the jurors. It appears that, after the appellant had exhausted her peremptory challenges, a lady whose husband was then an employee of the municipal railway system was called to the jury box. When her identity became known, appellant promptly challenged her right to sit upon the jury. The court denied the challenge. Rem. Comp. Stat., § 330, provides that a challenge for implied bias may be taken for the following causes:

". . . (2) Standing in the relation of . . . master and servant . . . to the adverse party; or being . . . in the employment, for wages, of the adverse party. . . ."

The juror's husband was an employee for wages of the city's municipal railway system. Clearly, he would not have been competent to serve as a juror in the case. *McMahon v. Carlisle-Pennell Lbr. Co.*, 135 Wash. 27, 236 Pac. 797. Under our statute, the earnings of the husband are presumptively community property. Rem.

Comp. Stat., § 6892. While the statute gives the husband management and control of the community personal property, yet, as was said in *Jones v. Duke,* 151 Wash. 108, 275 Pac. 72,

"In a large number of homes, husbands give their wives a considerable portion of their earnings, and the wife, as a rule pays out this money for household expenses, and, if possible, saves some portion thereof. In other homes, the husband pays the bills and cares for the savings."

In still other homes, it is said, the wife gets all of it. Whatever may have been the situation with respect to the present juror and her husband, the wife had a direct and immediate interest in the compensation received by her husband, and the reasoning that would imply bias on the part of the husband would, in our opinion, affect her to the same extent. The ruling of the court in denying the challenge was, therefore, prejudicial error.

The next assignment of error is upon the court's refusal to admit certain evidence. Appellant offered to prove that, in February, 1932, which was fifteen months after the accident and just a week prior to the trial, appellant's daughter, who was with the appellant at the time of the accident, had ridden upon the same bus along the same course, and by prearrangement was, at the time, being followed by two men in another automobile; she offered to prove that the bus was then traveling at the same rate of speed as at the time of the accident, and that, according to the speedometer of the accompanying automobile, the bus was then traveling at the rate of thirty-five miles per hour.

Counsel rely upon *Amsbary v. Grays Harbor Ry. & Light Co.,* 78 Wash. 379, 139 Pac. 46, as substantiating her contention that such evidence was admissible. In that case, the experiment was made to determine how

far ahead a person could be seen by the motorman of a street car. The test in that case was based upon circumstances and conditions that substantially reproduced the situation existing at the time of the accident. It was not predicated, as in the present case, upon a supervenient memory of so fluctuating and uncertain an element as the rate of speed of a bus, wholly unaided by a contemporaneous observation of its speedometer.

The case before us presents a range of variant circumstances more nearly like those in the case of *Lasityr v. Olympia,* 61 Wash. 651, 112 Pac. 752, where the refusal of the court to admit the evidence was upheld. Matters of this kind rest largely in the discretion of the trial court, reviewable only for abuse of sound judicial discretion. We think that the court did not abuse its discretion in its ruling in the present case.

Appellant's next assignment of error is upon the court's refusal to admit in evidence exhibit B, a photograph of the intersection at or near the northwest corner. Its purpose was, of course, to present an ocular representation of the location. Appellant had suggested that the jury be taken to view the premises; to this, respondents objected. The conditions there prevailing were quite material as bearing upon the permissible rate of speed of the two automobiles. It is not contended that the exhibit was not a fair representation of the general conditions. We are satisfied that the exhibit should have been admitted. *Kelly v. Spokane,* 83 Wash. 55, 145 Pac. 57.

Appellant next assigns as error a ruling of the court which excluded evidence of neuritis and of a chipped bone of her shoulder as elements of her damages. Physicians testified as to both of those conditions, but, on motion of the respondents, the evidence was stricken; this was on the theory that those mat-

ters had not been specifically set forth in the claim or pleaded in the complaint. The claim and complaint each refer to the injuries to the shoulder as consisting of a dislocation. So far as the claim was concerned, we think that the allegation was sufficient, inasmuch as claims of this nature are to be liberally construed, and will support allegations of a more specific designation in the complaint.

So far as the complaint was concerned, we think that the injury alleged was so specific as to indicate to the adverse parties what was to be relied upon at the trial, and, at least, would not suggest to them that a fracture would be claimed. In fact, the existence of the fracture was not discovered by appellant herself until the day before the trial, when her physician took an X-ray. While the appellant might have been entitled to an amendment of her complaint in that respect had she requested it, nevertheless the respondents would also have been entitled to be apprised of the additional claim of damage in order that they might make an examination, if they so desired, and thus meet appellant's evidence. To the extent of the evidence concerning neuritis, if it was the result of the dislocation, that was competent under the complaint as drawn. Evidence of the chipped bone, however, was not competent thereunder.

Appellant's final assignment of error is based upon the refusal of the court to give two requested instructions, and further, upon the instructions as given by the court.

First, as to the requested instructions: Appellant complains because the court refused to give her request No. 5. We find, upon examination of the instructions as a whole, that the court gave the request, verbatim, in its instruction No. 14. The other instruction requested by appellant merely stated that the vio-

lation of positive law was in itself negligence. Instruction No. 14, however, included that provision. No error, therefore, was committed by the court with reference to the requested instructions.

The court gave instruction No. 16, reading as follows:

"You are instructed that if you find that the stop sign was erected and standing at said alleged intersection and that defendant John Claseman, immediately preceding said collision, was aware of the presence and existence of said stop sign, or, acting as a reasonable and ordinary prudent person under like or similar circumstances, would have been aware of the same, or should have seen said stop sign, then said John Claseman would be negligent if he failed to stop at said stop sign, provided you believe that an ordinarily careful and prudent person, under like or similar circumstances, in the exercise of reasonable care, would have stopped at said stop, sign.

"If you believe that an ordinarily careful and prudent person, at the time and place of said alleged collision, in the exercise of reasonable and ordinary care would have been, under like or similar circumstances, aware of said stop sign, or would have seen said stop sign and would have stopped, then the defendant city of Seattle's bus driver had a right to expect the defendant John Claseman to stop his car and had a right to rely upon such expectation until such time as he saw, or, in the exercise of reasonable care should have seen, that said defendant John Claseman was not going to bring his car to a stop."

Appellant excepted to this instruction. The first paragraph of the instruction relates to respondent Claseman. We think that it was erroneous in two respects: First, it submitted to the jury the existence of the stop sign as a question of fact, whereas its existence was admitted by the answers of both respondents.

Second, it made obedience to the ordinance

which required respondent Claseman to stop, a matter of discretion on his part, rather than a positive duty.

The law did not permit him to govern his action merely by the exercise of reasonable care; it required him to stop. If the ordinance is to be construed as the instruction construes it, there would rarely be a case where a driver would be guilty of negligence in failing to stop, for he could always seek refuge in the assertion that reasonable care did not call for compliance with the ordinance. The law in this respect says positively what the care to be exercised by the driver is, and does not leave it to speculation, or even to the driver's judgment.

█ The second paragraph relates to the respondent city. It, also, is erroneous, in that it adopts the incorrect standard of care to be exercised by the city. A common carrier, such as the city in this instance was, is held to the highest degree of care compatible with the practical operation of its buses. That duty would not be met, as a matter of law, by mere observance of the law of the road. *Singer v. Martin,* 96 Wash. 231, 164 Pac. 1105. Counsel for the city assert that the identical instruction was given and approved in *Comfort v. Penner,* 166 Wash. 177, 6 P. (2d) 604. That case did not involve a common carrier. The bus driver's negligence, if any, as between him and his passenger, is to be measured by his duty as a common carrier, not by his duty to other users of the road. The instruction was prejudicially erroneous in the particulars referred to.

For the errors indicated, the judgment is reversed.

TOLMAN, C. J., HERMAN, BEALS, and MAIN, JJ., concur.