640 P.2d 304

**Ricky Allen QUINCY,
Plaintiff-Appellant,**

v.

**JOINT SCHOOL DISTRICT NO. 41, BE-
NEWAH COUNTY, Idaho, and Juanita
Fae Petrie, Defendants-Respondents.**

**No. 13172.**

Supreme Court of Idaho.

Dec. 1, 1981.

Rehearing Denied Feb. 18, 1982.

John Reid Tait and Paul C. Keeton, Lewiston, for plaintiff-appellant.

Samuel Eismann, Coeur d'Alene, for defendants-respondents.

DONALDSON, Justice.

This is an appeal from a jury verdict in a civil action for personal injury suffered in a motorcycle-automobile collision. Plaintiff-appellant Quincy sustained the injury while riding a motorcycle and attempting to pass an automobile owned by defendant-respondent school district and driven by defendant-respondent Petrie. At the time of the collision, Petrie was the agent, servant and employee of the school district and was operating the vehicle as part of her employment by the school district.

Following trial, the jury returned a special verdict attributing eighty percent (80%) negligence to appellant and twenty percent (20%) negligence to respondent Petrie. The trial court had previously granted respondent school district's motion for involuntary dismissal as to any active negligence on its

part outside that of its employee Petrie and, therefore, the school district was not included in the special verdict form as a possible entity to which a percentage of the negligence could be attributed. The jury also determined the total damages sustained by appellant to be $50,000.

Judgment was entered against appellant and appellant's subsequent motion for a new trial was denied. This appeal followed. We affirm the decision of the district court.

The basic facts are as follows. On January 28, 1976, Petrie in the course of her employment by the school district was driving an automobile, a 1964 Dodge sedan, from her residence enroute to the school building where she was to pick up a school bus and deliver children homeward. The automobile was owned and maintained by the school district and functioned as a shuttle car for school bus drivers. Petrie, while thus on her way to the school, interrupted her drive to conduct a matter of personal business and slowed the automobile to make a left turn into a private driveway. Petrie testified that she applied the brakes and activated the turn signal prior to initiating the turn. Quincy's motorcycle, coming from behind the automobile, collided with the left front fender of the automobile. Quincy was hurled from the motorcycle and sustained severe injuries.

The first assertion of error questions whether the school district was properly granted its motion for involuntary dismissal as regards the issue of active negligence on its part. From our review of the record, we agree with the conclusion of the district court that notwithstanding appellant's failure to set forth with particularity the factual grounds upon which his contention of active negligence by the school district rested, I.R.C.P. 59(a), no evidence was presented at trial sufficient to support such a contention. Moreover, the jury was advised that any negligence on the part of respondent Petrie would be imputed to the school district because of the employee-employer relationship. In light of the foregoing, we find no error in the district court ruling and we affirm the granting of the dismissal as made. See I.R.C.P. 41(b). There is no issue presented as to the applicability of I.C. § 49–1404.

The next assertion of error we deal with is that the district court erred in prohibiting the jury from receiving oral and written evidence as to the safe operation of vehicles by the employee drivers of a school district. This area is statutorily controlled by Chapter 15 of Title 33 of the Idaho Code, entitled "Transportation of Pupils." In looking to I.C. § 33–1501 et seq., it is apparent to this Court that the statutory requirements and the school district's response to those requirements through the compilation and adoption of safety rules and regulations, were intended to impact primarily upon the safety and adequate protection of the health of the pupils in the transportation of school pupils. In short, the safety rules were designed to prevent accidents in the transportation of pupils. In the instant case, the evidence discloses that respondent Petrie was not engaged in the transportation of pupils at the time of the accident. Nor was she driving a vehicle such as a school bus, which would require at the very least a driver's additional awareness of the oversize nature of the vehicle. Petrie was simply driving an ordinary automobile on her way to work. No pupils were present in the automobile. While the automobile was owned by the school district, the automobile was not functioning as a vehicle which would come under the purview of I.C. § 33–1501 et seq.[1] and, therefore, the safe-

1. I.C. § 33–1501 provides in part:

"Transportation authorized.—To afford more equal opportunity for public school attendance, the board of trustees of each district, including specially chartered school districts, shall, where practicable, provide transportation for the public and private school pupils (of) within the district, under condi-

tions and limitations herein set forth. In approving the routing of any school bus or other passenger equipment, or in the maintenance and operation of all such transportation equipment, or in the appointment or employment of chauffeurs, the primary requirements to be observed by the board of trustees are the safety and adequate protec-

ty rules designed to control the operation of such vehicles have no relevance in establishing the standard of care owed to others, including appellant, by Petrie in the operation of the automobile under the circumstances of this case. The district court's disallowance of the admission of evidence pertaining to safety rules, regulations, manuals, training sessions and training assistance for the training of operators of school vehicles as being not relevant and material is therefore affirmed.

In the next assertion of error that we consider, it is contended by appellant that the district court erred in failing to dismiss for cause one John E. Pugh as a juror in the case. The record discloses that counsel for plaintiff twice challenged Mr. Pugh for cause. The first challenge came after Mr. Pugh stated that his wife was a bus driver for the school district, and that he had discussed the accident with her, and that he doubted he could disregard what his wife had told him. Questioning of Mr. Pugh by the court went as follows:

VOIR DIRE EXAMINATION
BY THE COURT:

"Q. Mr. Pugh, of what you have heard, do you have a, has it caused you to form a present opinion as to the merits of the case.

"A. Well, no, not at present, but then I don't know if I could completely put out of my mind what my wife and I have talked about and—

"Q. Well, do you have a present opinion at this time?

"A. No, not really because I wasn't there myself.

"Q. Do you believe that you have any knowledge or know any of the facts of what happened in this accident.

"A. No.

"Q. Assuming that those facts are all presented during the evidence of this trial, can you and will you base your verdict solely upon the evidence introduced here in trial.

"A. Yes, I think.

"THE COURT: I deny the challenge."

Subsequent voir dire examination by appellant counsel revealed that Mr. Pugh believed he would probably discuss the case further with his wife. Again, he was challenged for cause. Again, the court questioned Mr. Pugh:

BY THE COURT:

"Q. You may not realize, but all of the jurors, not only you, the situation exists. The jurors will be under instruction when they go home tonight not to discuss the case with anyone and that includes family members or relatives. Do you believe that you can abide by that court order and instruction.

"A. Oh, yeah.

"Q. And in spite of that, would you abide by that court order in spite of some pressure from your spouse maybe to discuss it.

"A. Yeah.

"Q. Do you think you could handle the home situation if you were on the jury and as we have already instructed you once, but it will be repeated many times, not to permit anyone to discuss it with you. And if that should happen that you inform your wife that you cannot permit her to discuss it and you will have to cut

tion of the health of the pupils. Nothing herein contained shall prevent any board of trustees from denying transportation to any pupil in any school bus or other transportation equipment operated by or under the authority of said board, upon good cause being given, in writing, to the parents or guardian, or either of them, of such pupil."
I.C. § 33–1504 provides:
"School buses—Other passenger equipment.—a. A motor vehicle shall be deemed a 'school bus' when it has a seating capacity of nine (9) or more passengers not including the

driver, and is owned and operated by a school district or a common carrier and is used exclusively for transporting pupils, or is owned by a transportation contractor and is used regularly for transporting pupils.
    b. A motor vehicle shall be deemed 'other passenger equipment' when it has a seating capacity of not more than eight (8) passengers, not including the driver, and is owned and operated by a school district or by any person, firm or corporation, and is used regularly for transporting pupils."

off that conversation. Do you think that you could do that.

"A. I imagine.

"THE COURT: I will again deny your challenge, Mr. Tate."

██ I.R.C.P. 47(h) states that "[c]hallenges for cause shall be *heard and determined by the court* . . . ." (Emphasis added.) I.R.C.P. 47(i) states that "[v]oir dire examinations . . . shall *first be conducted by the court* . . . . The court shall *supervise* voir dire examination of the jurors to insure a speedy, fair and *thorough* examination of the jurors." (Emphasis added.) These provisions together make it clear that the primary responsibility for *voir dire* and the selection of competent jurors rests upon the trial judge. "It is the trial court and not this Court which is in a position to determine first hand whether a juror can render a fair and impartial verdict." *State v. Rose*, 121 Ariz. 131, 589 P.2d 5, 13 (1979). Certainly, it is the rule in Idaho that "factual determinations made by the district court will not be overturned on appeal unless they are clearly erroneous." *Rutter v. McLaughlin*, 101 Idaho 292, 293, 612 P.2d 135, 136 (1980).

██ In order to determine whether a juror should be excused for cause, the trial judge must weigh the pertinent facts and then decide if they justify exclusion of the juror pursuant to the standards set forth in I.R.C.P. 47(h). Although the *voir dire* of Mr. Pugh by plaintiff's counsel initially gave reason to challenge for cause, subsequent questioning by the court clarified the responses of Mr. Pugh so as to give the court ample basis for concluding that Mr. Pugh would serve as a fair and impartial juror. In view of these answers given by Mr. Pugh to the court's questions, it was clearly within the court's discretion to deny plaintiff's challenges for cause.

In the next assertion of error, the appellant alleges that there was not sufficient evidence to justify the verdict which attributed 80% of the negligence causing the accident to the appellant. The appellant argues that there was only one eyewitness to the accident and that her testimony was conflicting. Furthermore, the appellant argues that the respondent testified she observed nothing to indicate that the appellant had caused the accident. The appellant claims that this is clearly insufficient evidence to justify the verdict which attributed 80% of the negligence to the appellant.

██ The respondent argues that the jury was more than justified in its apportionment of fault. The eyewitness testified that the respondent's vehicle had slowed to start its turn into the driveway of the eyewitness. Furthermore, the respondent testified she had properly signaled her intention to turn for 150 to 200 feet and was still in her own lane of traffic when suddenly her vehicle was struck by the motorcycle. She also testified that she had checked in both of her rear view mirrors as she approached the driveway. The appellant testified but recalled nothing of the accident.

██ It is axiomatic that "[o]n appeal from a judgment entered on a jury verdict, this Court will not set aside the verdict if it is supported by substantial and competent evidence." *Conrad v. St. Clair*, 100 Idaho 401, 403, 599 P.2d 292, (1979); *Stoddard v. Nelson*, 99 Idaho 293, 581 P.2d 339 (1978); *Mann v. Safeway Stores, Inc.*, 95 Idaho 732, 518 P.2d 1194 (1974).

"By substantial, it is not meant that the evidence need be uncontradicted. All that is required is that the evidence be of sufficient quantity and probative value that reasonable minds *could* conclude that the verdict of the jury was proper. It is not necessary that the evidence be of such quantity or quality that reasonable minds must conclude, only that they *could* conclude." *Mann, supra,* 95 Idaho at 736, 518 P.2d 1198. A review of the record indicates that there is sufficient evidence sustaining the apportionment of fault by the jury.

The appellant next alleges that the court erred by reading certain preliminary instructions to the jury without giving the parties sufficient time to review and object to the instruction. Before commencing with the reading of the instructions the

trial judge stated: "Mr. Keeton, Mr. Tate, it is my custom ordinarily to give some preliminary instructions at this time in advance of the opening statement. Do you have any objections to that procedure. All right we will go ahead with it at this time."

■ Under I.R.C.P. 51(a)(1) challenges to rulings on requested jury instructions must be made a part of the record. The appellants failed to timely object to the district court's ruling. Therefore, the appellant is precluded from raising this issue on appeal. *See Stoddard v. Nelson*, 99 Idaho 293, 581 P.2d 339 (1978).

The appellant next alleges that failure to instruct the jury as to stipulated facts can be grounds for reversible error. The appellant submitted a requested instruction listing the undisputed facts and the trial court refused to give this instruction on the basis that it was unnecessary and that the court felt it would only burden the jury with more paper work. The appellant claims that this instruction referring to the stipulated facts is set out in Idaho Jury Instructions (IDJI) 104 and that following I.R.C.P. 51(a)(2)[2] the trial judge should have read the instruction because the rule recommends that the judge use the IDJI.

■ Rule 51(a)(2) recommends that the judge use the IDJI only after determining that the jury should be instructed on the subject. In this case the trial judge found it was unnecessary to instruct the jury again on the undisputed facts. The record shows that these facts were stipulated by counsel in the presence of the jury. The substance of that proposed instruction was adequately covered elsewhere and, hence, the trial court did not err in refusing to give appellant's proposed instructions.

*Garrett v. Nobles,* 102 Idaho 369, 630 P.2d 656 (1981); *Mann v. Gonzales,* 100 Idaho 769, 605 P.2d 947 (1980).

The appellant also contends that other jury instructions were erroneous. We find no merit to those specifications suggesting erroneous instruction. The instructions state the law clearly and adequately and the legal theories stated therein are supported by the facts produced at the trial. *Taylor v. Herbold,* 94 Idaho 133, 483 P.2d 664 (1971).

■ The next assertion of error by the appellant is that the jury should have been polled as to the question of whether there was any confusion concerning the negligence of the parties. Polling is a recognized means of ascertaining whether or not a jury is unanimous in their decision. 76 Am.Jur.2d, Trials, § 1122. The function of polling is not to determine whether there is any confusion as to the negligence of the parties, but, rather, it is used to determine whether the verdict rendered is the verdict of each juror. The appellant specifically stated that he did not wish to have the jurors polled as to whether the verdict as read was in fact their verdict. Therefore, no error was committed. *Cf. State v. Bounds,* 74 Idaho 136, 258 P.2d 751 (1953) (in a criminal case a juror is not to be polled concerning his or her agreement on specific elements of the offense charged).

■ The trial court awarded attorney fees to the defendant and the appellant appeals from this ruling. Attorney fees were awarded pursuant to I.C. § 12–121 which authorizes the trial judge to award reasonable attorney fees to the prevailing party. Since this matter was initiated prior to March 1, 1979, it was not necessary for

---

**2.** "Rule 51(a)(2). Use of Idaho Jury Instructions (IDJI).—Whenever the latest edition of Idaho Jury Instructions (IDJI) contains an instruction applicable to a case and the trial judge determines that the jury should be instructed on the subject, it is recommended that the judge use the IDJI instruction unless he finds that a different instruction would more adequately, accurately or clearly state the law. Whenever the latest edition of IDJI does not contain an instruction on a subject upon which the trial judge determines that the jury should be instructed, or when an IDJI instruction cannot be modified to submit the issue properly, the instruction given on that subject should be simple, brief, impartial and free from argument. When an instruction requested by a party is a modified IDJI instruction, the party should indicate therein, by use of parentheses or other appropriate means, the respect in which it is modified."

the trial court to make the findings presently required by I.R.C.P. 54(e)(1). We find no abuse of discretion. *Odziemek v. Weseley*, 102 Idaho 582, 634 P.2d 623 (1981).

The remaining assignments of error have been reviewed and the Court finds that they are without merit. The verdict of the jury is affirmed.

Costs to respondents.

BAKES, C. J., McFADDEN, and SHEPARD, JJ., concur.

BISTLINE, Justice, dissenting.

Today the Court announces that, *even though* an attorney has established sufficient doubt as to the impartiality of a juror to support a challenge for cause on voir dire, *questioning by the court may clarify the responses of the prospective juror so as to give the court ample basis for concluding that the prospective juror "would serve as a fair and impartial juror."* Unfortunately, the Court's "ample basis" doctrine runs head-on into the doctrine of plain common sense. Nor does the opinion of the majority comprehend that "discretion" is not an unfettered abdication of reason in favor of whim or caprice.

I

I.R.C.P. Rule 47(h) provides in part:

"Challenges for cause.—Challenges for cause shall be heard and determined by the court after voir dire examination of each prospective juror. The grounds for challenge for cause are as follows:

. . . .

"3. Standing in the relation of debtor or creditor, guardian and ward, master and servant, employer and clerk, or principal and agent to either party, or being a member of the family of either party, or a partner, or united in business with either party, or surety on any bond or obligation for either party.

. . . .

"5. Pecuniary interest on the part of the juror in the outcome of the action or in the main question involved in the action. . . ."

In examining Mr. Pugh on voir dire, the attorney for appellant Quincy elicited the following statements:

"BY MR. TAIT:

"Q. Mr. Pugh, I believe you are the gentleman that stood up earlier in response to some questions from the court and made some comments concerning employment of your wife, is that correct?

"A. Right.

"Q. She is employed as a school bus driver.

"A. Right.

"Q. *Who does she work for, the same School District as the defendants in this case.*

"A. *Yes, 41.*

"Q. *Do you know anything about this case.*

"A. *What we have discussed at home and she has discussed with me.*

"Q. *Does your wife know Mrs. Petrie.*

"A. *I imagine she probably does because she has been there about ten years driving a school bus.*

"Q. She has discussed the facts of this case with you.

"A. With me at home, and who else, I don't know.

"Q. But you have discussed this case previously with your *wife.*

"A. Right.

"Q. Have you reached any opinions or formed any ideas.

"A. I haven't, no.

"Q. Do you think that it would be possible for you to sit on this case and listen to the evidence and testimony that comes from these witnesses and weigh that testimony and totally disregard what your wife has told you or what the comments have been that you have heard around town about this case.

"A. I doubt it.

"MR. TAIT: I would challenge the juror for cause.

## VOIR DIRE EXAMINATION

"BY THE COURT:

"Q. Mr. Pugh, of what you have heard, do you have a, has it caused you to form a present opinion as to the merits of the case.

"A. Well, no, not at present, but then I don't know if I could completely put out of my mind what my wife and I have talked about and—[cut off by court]

"Q. Well, do you have a present opinion at this time.

"A. No, not really because I wasn't there myself.

"Q. Do you believe that you have any knowledge or know any of the facts of what happened in this accident.

"A. No.

"Q. Assuming that those facts are all presented during the evidence of this trial, can you and will you base your verdict solely upon the evidence introduced here in trial.

"A. Yes, I think.

"THE COURT: I deny the challenge.

[Mr. Tait continues questioning.]

. . . .

"Q. Has your wife ever given you an opinion as to the facts of this case.

"A. No.

"Q. She has never said anything about it was a collision and this is was what happened.

"A. Well, she possibly could have but I don't remember that part of it, what she—

"Q. Do you think that when you go home and tell her that you were on a jury in this case, that you will be able not to discuss the facts of the case and not say, 'Gee whiz, I was confused about something today, do you know Mr. Such-and-Such or Mrs. Such-and-Such,' and discuss it with her when you get home.

"A. Well, probably, but then I—

"Q. Do you feel that you probably will discuss it with her when you go home.

"A. Well, probably, but then I—

"Q. Do you feel that you probably will discuss it with her when you go home.

"A. If something will be said about it, probably.

"Q. This case is probably going to take several days so there will be several lunch sessions and dinner sessions and evenings that you will be home. Do you feel that you will inevitably discuss this case in some way with your wife over the next few days.

"A. Well, you have to talk about something. That is the highlights of the day.

"Q. She is going to want to know what you have been doing and what you have heard and if you try not to tell her, you are in trouble and there is going to be problems at home, right.

"A. I suppose.

"Q. Did she ever indicate to you or say to you who was at fault in this case.

"A. Not that I recall that, you know, she actually said who was at fault. I don't remember it if she did. If she formed her own opinion, I don't—

"Q. Do you think she is likely to remind you what she said if you go home and tell her you are sitting on this case.

"A. She possibly remembers a lot more than I would.

"Q. Do you think that she will say something to you about the case.

"A. Probably.

"Q. *And do you feel that even if the Judge instructs you that you are not to discuss the case with anyone, that realistically it will be impossible for you not to discuss the case with your wife.*

"A. Well, I don't know about that, but *I would say so.*

"MR. TAIT: I would have to challenge the juror for cause.

## VOIR DIRE EXAMINATION

"BY THE COURT:

"Q. You may not realize, but all of the jurors, not only you, this situation exists. The jurors will be under instruction when they go home tonight not to discuss the case with anyone and that includes family members or relatives. Do

you believe that you can abide by that court order and instruction.

"A. Oh yeah.

"Q. And in spite that, would you abide by that court order in spite of some pressure from your spouse maybe to discuss it.

"A. Yeah.

"Q. Do you think that you could handle the home situation if you were on the jury and as we have already instructed you once, but it will be repeated many times, not to permit anyone to discuss it with you. And if that should happen that you inform your wife that you cannot permit her to discuss it and you will have to cut off that conversation. Do you think that you could do that.

"A. I imagine.

"THE COURT: I will again deny your challenge, Mr. Tait." (Emphasis added.)

Mr. Pugh demonstrated some obvious reservations about his ability to keep the confidentiality required of all jurors. Upon being urged by the trial court, he "imagined" that he could respect that confidentiality. One would think that this in itself would support a challenge for cause. In addition, however, and perhaps more importantly, *Mr. Pugh's wife was employed by one of the defendants in the case.* Since Idaho is a community property state, the pecuniary interest of Mr. Pugh in the case was exactly as if his wife had been sitting on the jury. To put it bluntly, the trial court not only allowed, but urged, a person who had a pecuniary interest in the outcome of the trial to sit on the jury.

When the entire jury panel was examined by the court prior to examination by the attorneys, Mr. Pugh volunteered reservations about the fact that his wife was employed by the defendant school district; the court told him that that would be gone into upon examination by the attorneys. In short, Mr. Pugh was at a minimum a reluctant juror who was nevertheless urged by the court to participate in the trial. No

doubt Mr. Pugh's reluctance was engendered in part by the court's earlier admonition that "if any of you folks ever had occasion to submit a controversy, that you could not otherwise settle to a jury for a solution, that that [fair and impartial] is the type of juror that you would want." Mr. Pugh's common sense told him, as anybody's common sense *should* tell them, that if he were a plaintiff *he* would not want a person whose spouse was employed by the defendant to sit on the jury, *particularly* where that spouse *performed the same job* as the defendant.[1]

The constitutional right to a jury trial, Id. Const. Art. I § 7, includes the right to a *fair* and *impartial* jury, and that right was denied to Mr. Quincy in this case. We stated in *Stoddard v. Nelson*, 99 Idaho 293, 296, 581 P.2d 339, 342 (1978), that "a litigant should not be forced to exercise a peremptory challenge to exclude the prospective juror when it clearly appears that [the prospective juror] is disqualified for cause." I would hold that, pursuant to I.R.C.P. 47(h)(3) & (5), the trial court should remove any potential juror whose impartiality is in doubt due to his or her status as the spouse of one who is employed by a party to the litigation. *See Dotson v. Pennsylvania Railroad Co.*, 142 F.Supp. 509 (W.D.Penn. 1956) (juror excused whose father-in-law was an employee of defendant railroad); *Safeway Stores, Inc. v. Langdon*, 187 Colo. 425, 532 P.2d 337 (1975) (error not to excuse juror who was employee of defendant and whose brother-in-law was employee of defendant); *State v. Brady*, 299 N.C. 547, 264 S.E.2d 66 (N.C.1980) (in a criminal case juror excused who was employed by defendant's brother); *Washington v. City of Seattle*, 170 Wash. 371, 16 P.2d 597 (Wash.1932) (woman whose husband was employed by municipality held not competent as juror in suit against city). *See generally* 47 Am.Jur. 2d Jury § 319 (1969). As the court in *Safeway Stores, Inc. v. Langdon, supra,* put it, "[w]hen a prospective juror falls within the

---

1. A verdict against the school district might burden the juror's spouse in a nonpecuniary way, such as by fostering stricter requirements for bus driver qualifications and activities while on duty.

class of persons designated within the rule, actual bias need not be shown. Bias is implied to insure that a jury is impartial, not only in fact, but in appearance." 532 P.2d at 338. Unfortunately, the majority is more concerned with deferring to the district court's discretion than with applying I.R.C.P. 47(h), or with insuring that the plaintiff-appellant has an opportunity to present his case to a fair and impartial jury.

## II.

Despite the clear nature of the conflict of interest and the relative inconvenience of granting the challenge for cause in this case, the majority feels compelled to put forth its "ample basis" doctrine to affirm the trial court's ruling. The Court cites to that portion of I.C.R.P. 47(h) which states that "[c]hallenges for cause shall be heard and determined by the court ...." Whatever the significance of this phrase, it is certainly not a grant of unfettered discretion. In fact, the rule goes on to enumerate several criteria for challenges for cause—two of which are present here—and it is apparent that the phrase quoted by the majority simply states who the challenges are directed to—the judge. It does not by its terms give the trial court the option of ignoring the enumerated criteria.

The Court then quotes I.R.C.P. 47(i) for the proposition that "[v]oir dire examinations ... shall first be conducted by the court .... The court shall *supervise* voir dire examination to insure a speedy, fair and thorough examination of the jurors." (Emphasis added.) To properly understand the supervisory role which the rule refers to, however, a more thorough examination of the rule is necessary. It provides:

"Rule 47(i). Voir dire examination of jurors—Challenges.—Voir dire examination of the prospective jurors drawn from the jury panel shall first be conducted by the court. The attorney for the plaintiff,

and then the attorney for the defendant, and then the attorney for each other party to the action shall then be permitted to propound questions to each prospective juror concerning his qualifications to sit as a juror in the action. Any question propounded by an attorney to a prospective juror which is not directly relevant to the qualifications of the juror, or is not reasonably calculated to discover the possible existence of a ground for challenge for cause, or has been previously answered, shall be disallowed by the court upon objection or upon the court's own initiative. Challenges for cause may be made by an attorney at any time he is questioning a prospective juror, or no later than the conclusion of all questions propounded to an individual prospective juror, except that a challenge for cause may be permitted by the court at a later time upon a showing of good cause. The court shall supervise the voir dire examination of the jurors to insure a speedy, fair and thorough examination of the jurors."

Put in context, it is apparent that the rule is directed at curtailing irrelevant or duplicative questioning by attorneys. It is *not* a grant of authority to courts to, *on their own initiative,* "rehabilitate" jurors after attorneys have uncovered grounds for challenging for cause. The court is empowered to conduct voir dire first, then it is the parties' turn. The rule *specifically* allows for the court to disallow certain questions "upon the court's own initiative." Under the rule of *inclusio unius est exclusio alterius,* we must presume that, had the rule intended to allow courts to attempt to rehabilitate discredited jurors *on its own initiative,* it would have so provided. The federal rules, for example, expressly place primary responsibility for conducting voir dire in the hands of the trial court.[2] The defendant was certainly free to rehabilitate

2. F.R.C.P. 47(a) provides:

"Examination of Jurors. The court may permit the parties or their attorneys to conduct the examination of prospective jurors or may itself conduct the examination. In the latter event, the court shall permit the parties

or their attorneys to supplement the examination by such further inquiry as it deems proper or shall itself submit to the prospective jurors such additional questions of the parties or their attorneys as it deems proper."

Mr. Pugh or otherwise oppose the challenge, but I.R.C.P. 47(i) does not authorize the trial court to do so.

Having decided that the trial court could properly take matters into its own hands, so to speak, the majority then makes the gratuitous statement that "the primary responsibility for *voir dire* and the selection of competent jurors rests upon the trial judge." In support of this proposition, the Court cites an Arizona case dealing with the apportionment of that responsibility *as between a trial court and an appellate court.* This is a rather cavalier method of shifting responsibility for conducting voir dire, particularly in light of the controversy which has raged for some time over who should conduct voir dire.[3] It also ignores the plain language of I.R.C.P. 47(i). Attorneys for each party play a role in jury selection which historically has been far more important than that of the trial court, and the question here involves a usurpation by the trial court of the plaintiff's right to meaningfully participate in the jury selection process.[4] This right, of course, is limited and defined by our rules of civil procedure. But I.R.C.P. 47(i) by its terms does place the responsibility for conducting voir dire on *both* the court and the attorneys. While the trial court is charged with overseeing the selection of jurors, and the parties do not have an unchecked hand in jury selection, the bench and bar alike should be alarmed by the suggestion that it is now the trial court which bears the "responsibility for . . . the selection of competent jurors . . . ." Simply put, it is a forewarning that the Court is ready to embrace the federal procedures which obtain in the United States district courts. This shifting of responsibility for jury selection from the attorneys to the court occurs without any

discussion or consideration of its practical consequences.

To my mind, the consequence which is most important is the decrease in attorneys' ability to control their clients' cases and the resulting unfairness to clients. As one commentator put it:

"Most discussion of voir dire labors under an unfair burden of prejudice: the judge is always identified as the timesaver, the lawyer as the time-waster. That is wrong. Attorneys want to save time, too, but their main concern is fairness to their clients. The proponents of judge-conducted voir dire, like the proponents of all too many court efficiencies, seem to have forgotten that the purpose of the courts is to assure justice, not to dispose of as many cases as possible, regardless of the consequences." Begam, Who Should Control Voir Dire? The Attorneys. 61 Judicature 71, 78 (1977).

To summarize, two of the criteria for challenging for cause set forth in I.R.C.P. 47(h) were clearly met here, and in addition, the juror admitted the possibility that he might not be able to follow the court's admonition to not discuss the case with his wife—who was employed by the defendant. Additionally, the trial court went beyond the bounds of I.R.C.P. 47(i) by conducting further questioning of the juror on its own initiative, and despite the obvious doubts and reluctance of the juror.

The majority not only defers to the discretion of the trial court but suggests rather strongly that the trial court is primarily responsible for conducting voir dire—despite the plain language of I.R.C.P. 47(i).

Back of it all is the fact, well known to all attorneys with even a limited trial prac-

---

3. *See generally* Draheim, Efficient Jury Utilization Techniques . . . or Proposition 12, 28 Drake L.Rev. 21, 32–36 (1978); Erickson, Voir Dire: Criticism and Comment, 47 Den.L.J. 477 (1970); Fortune, Voir Dire in Kentucky: An Empirical Study of Voir Dire in Kentucky Circuit Courts, 69 Ky.L.J. 273 (1981); Gutman, The Attorney-Conducted Voir Dire of Jurors: A Constitutional Right, 39 Brooklyn L.Rev. 290, 326–29 (1972); Comment, Voir Dire Examina-

tion: Court or Counsel, 11 St. Louis U.L.J. 234 (1967).

4. The question is *not* whether the trial or appellate court should decide disputed facts in challenges for cause. Here, the facts are not in dispute. While the demeanor of Mr. Pugh might bear on his credibility, his direct pecuniary interest in the defendant's finances makes that credibility irrelevant.

tice, that to challenge any juror for cause is a decision to be carefully made, and the doing of which has considerable potential for endangering the cause of the client. If the challenge is not sustained, then, as experience has taught, and human nature being what it is, the challenged juror may very likely assay that his integrity has been called in question, and the result may be a biased, if not outright hostile, juror. Moreover, the confrontation which takes place is one between the court and the challenging party—which of itself may lend to subtle influences of bias or prejudice. When it is the court itself, and not opposing counsel, which motivates and insists on the rehabilitation of the challenged juror, the court has become that juror's champion, and in turn becomes the champion of the other jurors as well—none of which bodes well for the challenging party.

Then, too, there is always the necessity of thereafter removing the unsuccessfully challenged juror with a peremptory challenge. This will perhaps alleviate much of the damage, but not all. Experience teaches that a group of citizens brought together as a jury panel almost immediately form an esprit de corps of sorts and do not take altogether lightly the dismissal of one of their number, either for cause or peremptorily. That may be indeed a minor consideration. But not minor is the further proposi-

tion that peremptory challenges are not an inexhaustible resource, and there may be the situation in which the challenged juror must be left on the jury in favor of removing another who appears more objectionable to the client's cause.

Such was so in this case. The unsuccessfully challenged juror not only sat, but was elected foreman of the jury—a not too unforeseeable occurrence when it was made to appear to the other jurors that the trial court went to some lengths to keep the challenged juror in the box, from which the jurors might readily conclude that the court perceived the challenged juror as a man of good qualifications—notwithstanding the assault on his "character."

With other prospective jurors on hand it is difficult to understand why the challenged juror was not quickly and quietly excused. The closeness of the issues impels one to conclude that the error was not without resultant prejudice, for which reason I would reverse and remand for a new trial.