923 P.2d 981

**Joy D. HUMMER, Plaintiff–Respondent,**

v.

**Jerry L. EVANS, in his capacity as Superintendent of the Idaho Department of Education, Defendant–Appellant.**

No. 21796.

Supreme Court of Idaho, Boise, February, 1996 Term.

Aug. 29, 1996.

Rehearing Denied Oct. 10, 1996.

Cosho, Humphrey, Greener & Welsh, Boise, for appellant Jerry Evans. Howard Humphrey argued.

Alan G. Lance, Attorney General; Kirby D. Nelson, Deputy Attorney General, Boise, for appellant Idaho Department of Education.

Skinner, Fawcett & Mauk, Boise, for respondent. William L. Mauk argued.

SCHROEDER, Justice.

This is an appeal from a Decision and Order entered after a court trial. The case concerns the termination of Joy Hummer, an employee of the Idaho Department of Education. The termination was based on a letter written by the employee to a judge related to the sentencing of a felon. The district court held that the termination violated public policy and awarded damages against Jerry Evans, a former State Superintendent of Public Instruction. Evans appeals the ruling of the district court.

## I.

### BACKGROUND AND PRIOR PROCEEDINGS

Joy Hummer was hired by the Idaho Department of Education ("Department") on September 12, 1988, as a consultant on Acquired Immune Deficiency Syndrome (AIDS) education. The consultant had the general responsibility to research and disseminate AIDS information to local educators, to provide in-service education on AIDS education to teachers and administrators, to represent the Department on task forces and to provide technical assistance to local educators on AIDS education and prevention. A subsequent letter of appointment dated July 1, 1991, provided that the employment was "for the period beginning July 1, 1991, and ending June 29, 1992, at an annual salary of Thirty Nine Thousand Dollars and no cents ($39,000.00)."

During her employment with the Department, Hummer experienced some public relations difficulties. She conducted an in-service training for the Mountain Home School District in early 1990 on the legal aspects of HIV–AIDS education. After a non-mandatory workshop some participants remained to discuss issues with Hummer. In the aftermath of a joking reference to approaches being taken by school districts elsewhere in the nation she showed them a list of condom slogans developed by school children. One teacher copied the list, and subsequently another teacher from Mountain Home asked Hummer to mail a copy of the slogans. The teacher from Mountain Home was outraged by the list and wrote Idaho legislators, some of whom were also distressed. Hummer wrote a letter of apology to the legislature. She also tendered her resignation which was not accepted. However, she lost one week's pay and was placed on probation for several months.

Subsequent to the slogan list problem, Hummer drafted a training notebook to be used by school districts for sex education. Evans was contacted by legislators who objected to some of the lessons in the notebook. Evans then directed the superintendents to return the notebooks to Hummer and made them available upon request only. No disciplinary action was taken against Hummer for the mailing of the training notebooks.

In a June, 1991 evaluation, Hummer received a generally good evaluation. However, her supervisor noted the following:

> Joy needs to continue to explore ways to meet the objectives of the project without creating a vocal uproar. The tenuous circumstances surrounding the project are not a result of Joy trying to meet the needs of the schools but the powerful influence of some, who are opposed to any sexual related programs in our schools.

During an AIDS education session for the Idaho Department of Probation and Parole, Hummer met an inmate, Kerry Stephen Thomas, who had tested positive for the HIV virus. Thomas was a Boise State University basketball player who had been convicted of statutory rape for his involvement with a young patient at a psychiatric facility where he worked. He had consensual sexual relations with several women after he knew he had tested positive for the HIV virus, but the criminal charges relating to those activities were dismissed as part of a plea bargain with the State. Hummer found Thomas's ignorance about his HIV status and his lack of anyone to talk to about his disease to be appalling. She found him personable and intelligent and hoped to persuade him to be a speaker on AIDS prevention.

The attorney for Thomas was seeking to get his sentence reduced. On two occasions the attorney subpoenaed Hummer to provide testimony at hearings on the motion to re-

duce the sentence. The court hearings were vacated and reset. Hummer had told her supervisor, Mr. Pelton, that she had been subpoenaed; however, there had been no discussions about what her testimony would be. The sentencing hearing was ultimately set for a date when Hummer was scheduled to be out of town for a training conference. She told the attorney for Thomas of her problem, and it was decided that she could simply write a letter to the sentencing judge with the information which she would provide if she testified at the hearing.

While Hummer was drafting the letter, a co-worker suggested that Hummer contact the Department's legal counsel before submitting the letter since she was writing the letter on Department letterhead. At trial Hummer testified that the information officer for the Department had warned her after one of the previous conflicts that whatever she did, she did as a representative of the Department.

Without contacting the Department's legal counsel or her supervisor, Hummer sent the following letter to the sentencing judge on Department letterhead:

TO WHOM IT MAY CONCERN:

Stephen Thomas and I became acquainted when I presented an HIV/AIDS workshop to the probation parole program. After he had shared his HIV status and story, I continued to remain in contact by sending information about the virus and progress in medical research and improved prevention education.

As we visited, Stephen asked me what my interest was in him personally? It had occurred to me that a black, basketball star who had been a hero to many youngsters and received the virus through heterosexual transmission would be a great asset in giving prevention messages to children.

Not realizing how prophetic that statement was, I began to "court" Stephen to see if he might be willing to visit with groups about his story. He is an articulate, intelligent man who could be a great asset to Idaho's prevention programs. Although he is a convicted felon, I believe his story needs to be told because if it can happen to the All–American black kid, it can happen to anyone.

Idaho has its very own Magic Johnson whose HIV story is worth hearing. If/When he is available, I would not hesitate to arrange contact with youth should he agree. Many school districts have requested HIV infected speakers and their presentations have been found to be effective on a short-term basis.

Respectfully,

s/

Joy Hummer

HIV/AIDS Education Consultant

The sentencing judge referred to Hummer's letter in his decision to modify the sentence previously imposed on Thomas.

The Department's policy on the handling of subpoenas was set forth in its *Handbook for Employees* under the provisions related to leaves. Employees who were subpoenaed in their official capacities were not required to take leave, but employees who were subpoenaed in a non-official capacity had to take accrued leave. There was no policy requiring an employee to notify anyone of a subpoena or the contents of testimony which might be given.

The prosecutor handling the Thomas case was incensed when he determined that another state agency was supporting the sentence reduction. Evans was also angered that the letter appeared to represent a departmental view rather than a private view. Evans received numerous complaints about the impression the letter gave that the Department was using a convicted rapist as a role model.

On February 27, 1992, Evans wrote Hummer a letter of termination, effective February 28, 1992, attributing the letter to the sentencing judge as the basis for the termination. Evans wrote, "While you certainly have every right to make such statements in your individual, private, capacity, the letter was written on State Department of Education letterhead and signed by yourself in your capacity as HIV/AIDS Education Consultant." Evans admonished Hummer's refusal to contact legal counsel prior to writing the letter and her refusal to share the letter with her supervisor. He indicated that

278

Hummer's poor judgment jeopardized the AIDS program.

Hummer appealed the "recommendation" of Evans to the Idaho Board of Education. However, the Board stated that "the Board has no jurisdiction over the Department of Education terminations," concluding that Hummer was an employee of the Superintendent of Public Instruction.

Hummer filed a Complaint in the district court against Evans, the Idaho Department of Education and the Idaho State Board of Education alleging: (1) termination in violation of public policy, (2) breach of an implied contract, (3) breach of the implied covenant of good faith and fair dealing, and (4) intentional interference with a contract. The case was tried before the district court without a jury. The district court issued its initial decision on February 8, 1994, concluding that Hummer's termination was a violation of public policy:

> There is an overriding public policy interest in obtaining candid information for use in sentencing decisions. Regardless of the content of the testimony, courts need the input of a variety of people in determining the penalty to be imposed upon a person who has committed a crime. Idaho law requires sentencing judges to consider a variety of factors: the need to protect the public, the need to deter the defendant or those similarly minded, rehabilitation and punishment. The dominant goal—to protect the public interest and safety—can only be served when judges have the benefit of information from a variety of sources. The need for information is strong regardless of whether the information favors or disfavors the defendant. To allow employers to terminate the employment of someone who is providing information to a sentencing court is directly against the public policy of the state of Idaho.

Since Hummer had been subpoenaed, the court concluded that "[i]t is unfair to allow an employee to be sandbagged by punishing them for doing what the law compels." The district court focused on the fact that there was not a written policy addressing employees' responses to subpoenas and found that "it is clear that the reason for her termination in the Spring of 1992 was the letter she wrote in support of the Thomas sentence reduction." The court concluded that the Department could have required a disclaimer that emphasized that the employee was providing only a personal view, but the Department had not provided such a requirement.

In determining the appropriate amount of damages the district court posed the following question: "[H]ow long is it reasonable to assume that Joy Hummer would have remained with the Department of Education?" The Department indicated that Hummer would not have had her letter of appointment renewed. Hummer also expressed doubt that her employment with the Department would have continued until retirement. The court recognized the philosophical differences between the Department and Hummer and acknowledged the strong likelihood that her contract would not have been renewed, stating the following:

> The leadership abilities, strength, commitment and enthusiasm which made her a good teacher led her into a series of blunders which endangered the entire Aids program and which would, more probably than not, have resulted in the nonrenewal of her appointment.

The district court entered judgment in favor of Hummer and against Evans, in his official capacity. The court awarded Hummer $10,349.71, together with prejudgment interest, which is the amount she would have received in wages through the end of June, 1992. On March 14, 1994, Hummer filed a Motion to Alter or Amend Judgment, requesting the court to apply tort principles for the damage calculations and increase the award of damages to an amount of $85,480.

In its Order dated December 19, 1994, the court found that Hummer's difficulty in obtaining other employment was "directly attributable to her abrupt discharge." The court relied on *O'Dell v. Basabe*, 119 Idaho 796, 810 P.2d 1082 (1991), in determining the amount of future lost wages to be awarded. In *O'Dell* the Court determined that the relevant factors include "the plaintiff's salary history, scheduled or mandated pay raises, and a finding based on the evidence in the record of the time which it will take the plaintiff to find comparable employment with a commensurate salary, at which time the

award of front pay should be discounted." 119 Idaho at 812, 810 P.2d at 1098.

Based on her unsuccessful attempts to obtain new employment and the court's conclusion that "it is more probable than not that, absent the abrupt discharge, she would have found a job with at least the same benefits and salary," the court concluded that an additional year's salary was a reasonable amount of additional damages. Consequently, the court awarded an additional $46,551.38 plus costs of $1,070.10, bringing the aggregate sum to $60,100.47.

## II.

## STANDARD OF REVIEW

■ The credibility and weight to be given evidence is in the province of the trier of fact, and the findings made by the trial judge will not be set aside unless clearly erroneous. *Sun Valley Shamrock Resources, Inc. v. Travelers Leasing Corp.*, 118 Idaho 116, 118, 794 P.2d 1389, 1391 (1990); I.R.C.P. 52(a). This Court will uphold the trial court's findings of fact if supported by substantial and competent evidence. *Ireland v. Ireland*, 123 Idaho 955, 957–58, 855 P.2d 40, 42–43 (1993); *In re Baby Boy Doe*, 127 Idaho 452, 456, 902 P.2d 477, 481 (1995). On issues of law, this Court exercises free review. *Ausman v. State*, 124 Idaho 839, 841, 864 P.2d 1126, 1128 (1993).

## III.

## THE DISTRICT COURT'S DETERMINATION THAT THE TERMINATION OF HUMMER BY THE DEPARTMENT WAS A VIOLATION OF PUBLIC POLICY IS SUPPORTED BY SUBSTANTIAL COMPETENT EVIDENCE.

■ The district court determined that Hummer was an employee "terminable at will." A court's determination of an employee's employment status is a factual finding. *See Jones v. EG & G Idaho, Inc.*, 111 Idaho 591, 594, 726 P.2d 703, 706 (1986). The parties agree that under Idaho statutory provisions and the Department Handbook she was an employee at will despite the term specified in the letter of appointment.

■ The employer of an employee at will may terminate the relationship at any time for any reason without incurring liability, unless the motivation for the termination contravenes public policy. *Ray v. Nampa School Dist. No. 131*, 120 Idaho 117, 120, 814 P.2d 17, 20 (1991); *Jones*, 111 Idaho at 593, 726 P.2d at 705; *MacNeil v. Minidoka Memorial Hosp.*, 108 Idaho 588, 589, 701 P.2d 208, 209 (1985).

This Court established the public policy exception to the employment at will doctrine in Idaho in *Jackson v. Minidoka Irrigation Dist.*, 98 Idaho 330, 563 P.2d 54 (1977):

The employment at will rule is not, however, an absolute bar to a claim of wrongful discharge. As a general exception to the rule allowing either the employer or the employee to terminate the employment relationship without cause, an employee may claim damages for wrongful discharge when the motivation for the firing contravenes public policy.

98 Idaho at 333, 563 P.2d at 57. The *Jackson* court set forth examples of the public policy exception from other jurisdictions: *Petermann v. International Bhd. of Teamsters*, 174 Cal.App.2d 184, 344 P.2d 25 (1959) (employee discharged for refusing to commit perjury); *Frampton v. Central Indiana Gas Co.*, 260 Ind. 249, 297 N.E.2d 425 (1973) (employee fired for filing worker's compensation claim); *Nees v. Hocks*, 272 Or. 210, 536 P.2d 512 (1975) (employee was fired for serving on jury duty against the wishes of her employer); *Jackson*, 98 Idaho at 333–34, 563 P.2d at 57–58.

In *Watson v. Idaho Falls Consol. Hosps. Inc.*, 111 Idaho 44, 720 P.2d 632 (1986), this Court upheld a jury instruction which instructed that a termination based on legal union activities would be contrary to public policy established by the Legislature. In *Ray v. Nampa School Dist. No. 131*, this Court found that terminating an employee for reporting safety code violations to the state electrical engineer is contrary to the public policy established by the legislature. 120 Idaho 117, 814 P.2d 17.

■ A termination of an employee based on the employee's compliance with a court-issued subpoena is contrary to the public

policy of this state, as established by the legislature and this Court. Failure to comply with a subpoena may be punished by contempt. I.C. § 19–3010; I.R.C.P. 45(f). The district court was correct to point out that there exists an overriding public policy interest in obtaining candid, truthful information for use in court proceedings. Regardless of the content of the testimony, courts need the input from a variety of sources when making vital decisions, such as determining the penalty to be imposed on a person convicted of committing a crime. Persons must appear as witnesses when subpoenaed and must testify truthfully, subject to penalties for contempt and prosecution for perjury.

Hummer provided the letter at issue to the sentencing judge in lieu of appearing in court, as commanded by the subpoena. Such evidence is protected to the same extent as live testimony. The termination of Hummer for responding to the court-issued subpoena was a violation of the public policy of the state of Idaho and is a basis for a claim of wrongful termination. *Jackson,* 98 Idaho at 333, 563 P.2d at 57.

## IV.

## HUMMER IS ENTITLED TO CONTRACT DAMAGES FOR THE WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY.

■ In *Jackson,* 98 Idaho at 334, 563 P.2d at 58, this Court indicated that employment at will constitutes a contract. The *Jackson* Court relied upon *Monge v. Beebe Rubber Co.,* 114 N.H. 130, 316 A.2d 549 (1974), in which the New Hampshire court recognized the cause of action for discharge in violation of public policy as a breach of the employment contract. Inherent in the *Monge* court's decision is the conclusion that all employees are subject to employment contracts, "whether at will or for a definite term." 316 A.2d at 551. In *Jackson* this Court also referred to a "contract of employment at will," which exemplifies this Court's intent to classify a cause of action for wrongful termination in violation of public policy as

a breach of contract rather than a tort. 98 Idaho at 334, 563 P.2d at 58.

■ All employment contracts terminable at will are subject to the covenant of good faith and fair dealing. *Metcalf v. Intermountain Gas Co.,* 116 Idaho 622, 778 P.2d 744 (1989). "A breach of the covenant is a breach of the employment contract, and is not a tort. The potential recovery results in contract damages, not tort damages." *Id.* at 626, 778 P.2d at 748. Similarly, a cause of action for wrongful termination of a contract of employment at will based on a violation of public policy is a contract cause of action which results in contract damages.

■ "Front pay," as future lost wages, is not too speculative as a matter of law to be awarded as an element of damages. *O'Dell v. Basabe,* 119 Idaho at 812, 810 P.2d at 1098. "The fact that contract damages are not capable of exact proof does not preclude their availability as a matter of law. The rule is that the measure of damages is such as will compensate for the loss suffered as the result of a breach of contract." *Id.* Damages relating to lost future benefits must be proven with "reasonable certainty":

> Where a claim is asserted for the recovery of future benefits, the burden of proof is upon the plaintiff to prove with reasonable certainty the amount of the loss caused by the conduct of the defendant. In the context of an employment contract for an indefinite term, a plaintiff might resort to evidence such as employment history to show likelihood of future employment.

*Id.*

■ Hummer is entitled to contract damages based on the Department's wrongful termination of her in violation of public policy. She is entitled to the initial award of $10,349.71, which is the amount of salary and benefits she would have received through the ending date set forth in her letter of employment—June 29, 1992. A deprivation of that amount of salary and benefits has been shown with "reasonable certainty." *O'Dell,* 119 Idaho at 812, 810 P.2d at 1098.

■ Hummer has not proven with "reasonable certainty" that her employment with the Department would continue beyond the

ending date set forth in the letter of appointment. The record adequately shows and the district court recognized that Hummer "would not have had her contract renewed" based on various public relations difficulties. Hence, Hummer has not shown a "likelihood of future employment" with the Department. *Id.* The fact that she had not found commensurate employment as of the date of the hearing on the additur does not establish a basis for the additur. Consequently, the district court's award of additional damages of $46,551.38 is reversed.

## V.

## CONCLUSION

The district court's conclusion that Hummer's termination was a violation of public policy is affirmed. She is entitled to the initial award of damages and costs. The district court's grant of additur damages is reversed. Each party has prevailed in part on appeal. No costs or attorney fees are awarded.

McDEVITT, C.J., and JOHNSON, TROUT and SILAK, JJ., concur.