985 P.2d 674

The INLAND GROUP OF COMPANIES, INC., and G & L Forest Products, Inc., Plaintiffs–Respondents–Cross–Appellants,

v.

PROVIDENCE WASHINGTON INSURANCE COMPANY, Defendant–Appellant–Cross Respondent.

and

Hoyle and Associates Insurance, Inc.; and John Quapp, Defendants.

No. 23875.

Supreme Court of Idaho, Boise, December 1998 Term.

Aug. 12, 1999.

Brassey, Wetherell, Crawford & McCurdy, Boise and Moffatt, Thomas, Barrett, Rock & Fields, Boise, for appellant. William A. McCurdy argued.

Law Offices of Comstock & Bush, Boise, for respondents. John A. Bush argued.

WALTERS, Justice.

This is an appeal from a judgment awarding compensatory and punitive damages against Providence Washington Insurance Company for bad faith in adjusting an insurance claim arising out of a fire at a wood remanufacturing plant operated by G & L Forest Products, Inc. (G & L) in Emmett, Idaho. The judgment was entered upon a jury's verdict. We affirm.

## BACKGROUND AND PROCEDURAL HISTORY

On August 15, 1991, an accidental fire destroyed a significant portion of the equipment utilized in G & L's wood remanufacturing plant, causing G & L to cease operations. G & L made a claim for property loss and loss of business income under a commercial insurance policy issued by Providence Washington Insurance Company. Because of delays in settling its claim, G & L never reopened its doors after the fire.

Prior to the fire, G & L had been experiencing financial difficulties. However, G & L was still a going concern, and, primarily due to an advantageous contract with TJ International and a new management style, G & L had recently begun to show signs that business was improving. Nevertheless, because it could not operate after the fire, G & L was in a precarious financial position. The seriousness of the financial situation was communicated to Providence along with G & L's claim under the policy.

Shortly after the fire, both parties hired independent adjusters. Anthony Kounalis of Colorado Casualty, which is wholly owned by Providence, supervised the adjustment of the claim for Providence. Kounalis retained Bruce Van Curen of Idaho Intermountain Claims, an independent adjusting service, because neither Colorado Casualty nor Providence had offices in Idaho. G & L hired Drew Lucurell to assist with the preparation of its claim.

G & L received estimates for repairing the equipment, and computed its loss under the business income coverage. On August 30, approximately two weeks after the fire, G & L submitted a settlement proposal to Kounal-

is together with estimates for the equipment repair and copies of balance sheets for the previous two months. Kounalis called Van Curen, and on September 3, authorized him to hire an accountant to look at the business income loss. Kounalis apparently did not discuss G & L's settlement offer with Van Curen or provide Van Curen with the accompanying documentation at that time. Although Kounalis was aware that G & L could not operate its plant and was in a precarious financial position after the fire, there was no deadline set for the accountant to complete his work.

On September 3, Van Curen met with the repair contractor and agreed upon $68,579 as the amount for necessary repairs. Van Curen advised Kounalis of this amount, but Kounalis did not authorize payment. Kounalis did, however, authorize an advance to G & L of $50,000. This exhausted the limit of Kounalis' authority; any further payments on G & L's claim would have required further authorization from someone at Providence. Kounalis did not contact Providence to obtain any further authorization.

On September 4, Van Curen hired Jerry Bermensolo to look into G & L's business loss. However, since he had not yet done anything with regard to the business income loss, Van Curen could not provide any information to Bermensolo other than the coverage form from the policy. Van Curen had not been given the documentation that accompanied G & L's settlement proposal. Through Van Curen, Bermensolo sent G & L a comprehensive request for financial records including a request for all financial statements since the inception of the company. It took G & L until September 26 to gather the documentation requested by Bermensolo. On the 26th, Bermensolo met with Wayne Eskridge from G & L and reviewed the documentation. He left two hours later, without requesting any copies or additional information.

G & L was planning to move its plant to a new location. Consequently, Kounalis and Van Curen hired an attorney to determine whether Providence would be required under the policy to pay for the reassembly of equipment that G & L had planned to move.

Although they had been aware for some time that G & L intended to relocate, they did not request the legal opinion until September 30.

Both Bermensolo and the attorney completed their work on October 14. Van Curen reviewed their reports when he returned from vacation on October 21. Van Curen sent a letter to Lucurell indicating that the accountant had calculated the business loss, but that the payment would be allowed for only two months of business loss even though approximately ten to twelve weeks would transpire before the repairs could be completed. Van Curen testified that the figure was limited to two months because G & L had delayed providing the financial records, although Van Curen acknowledged that there was no connection between the financial records and the time necessary to complete repairs. Van Curen also stated a figure for repair, but failed to advise Lucurell that the figure did not include reassembly of the equipment. Lucurell responded that they appeared to be close on the property loss, but that G & L disagreed with the business income calculation. He also requested that Providence tender the undisputed amounts.

Van Curen's letter was not a settlement offer because he lacked authority to make such an offer. On October 30, Providence made a formal offer of settlement. It did not, however, tender the undisputed amounts under the property loss claim until December 5, 1991, and because G & L had not made repairs, Providence offered the actual cash value of the equipment rather than the amount necessary to repair or replace. Providence did not tender the undisputed amounts under the business loss coverage.

While waiting to settle its claim and reopen the plant, G & L went out of business. On October 1, G & L was notified that its primary contract with TJ International was being cancelled because G & L could not provide a sufficiently certain date when it might be able to complete repairs and reopen its plant. The TJ contract was an important contract for G & L; those familiar with the company testified that G & L was essentially out of business when the contract with TJ was cancelled.

G & L filed a complaint against Providence on January 15, 1992, alleging breach of contract and breach of the obligation of good faith and fair dealing. G & L sought damages for breach of contract, including the amount due under its business income loss coverage. G & L also sought damages for the lost value of the business as a going concern under the bad faith claim.

Approximately five months after answering the complaint, Providence moved to compel arbitration. The district court granted Providence's motion, and an arbitration was conducted pursuant to the policy. Following the arbitration, the case proceeded to trial on G & L's bad faith claim for loss of the business itself. The jury found in favor of G & L and awarded $453,702 in compensatory damages and $680,553 in punitive damages. Following the denial of its motion for new trial or for judgment notwithstanding the verdict, Providence appealed.

## ISSUES

We address the following issues on appeal:

1. Whether the evidence presented by G & L was sufficient to support the jury verdict of bad faith when viewed in light of this Court's recent decisions in *Walden v. Nationwide Ins. Co.,* 131 Idaho 18, 951 P.2d 949 (1998), and *Anderson v. Farmers Ins. Co. of Idaho,* 130 Idaho 755, 947 P.2d 1003 (1997).

2. Did the district court err by placing the obligation of good faith and fair dealing solely upon Providence, and was Providence entitled to an instruction on comparative negligence?

3. Whether the district court abused its discretion and allowed evidence of speculative damages.

4. Was it improper to allow the use of the Unfair Claims Settlement Practices Act as a standard of care?

5. Was the jury improperly instructed concerning damages?

6. Was the punitive damages question appropriately submitted to the jury?

## ANALYSIS

1. **The jury verdict is supported by substantial and competent evidence, and neither *Anderson* nor *Walden* dictate a different result in this case.**

Providence argues that an insured may not bring a bad faith action without first complying with all terms of the insurance policy. Because G & L did not demand arbitration, and, according to Providence, responded slowly to requests for financial records, Providence argues that G & L should not have been allowed to proceed with its bad faith claim. Providence also argues that the evidence presented by G & L merely shows that Providence relied upon its rights under the policy to request documentation of the loss, investigate the nature of the loss, and arbitrate disputed claims. Providence asserts that it cannot be held in bad faith for this reliance upon its rights under the policy as a matter of law.

Providence relies upon this Court's recent decisions in *Walden v. Nationwide Ins. Co.,* 131 Idaho 18, 951 P.2d 949 (1998), and *Anderson v. Farmers Ins. Co. of Idaho,* 130 Idaho 755, 947 P.2d 1003 (1997) to support both arguments. We hold that neither *Anderson* nor *Walden* dictate that Providence may not be held liable for bad faith as a matter of law and conclude that the jury's verdict is supported by substantial and competent evidence.

### A. Standard of review.

This Court exercises free review over questions of law. *Automobile Club Ins. Co. v. Jackson,* 124 Idaho 874, 876, 865 P.2d 965, 967 (1993). However, we will not set aside a jury verdict if it is supported by substantial and competent evidence. *Quincy v. Joint School Dist. No. 41,* 102 Idaho 764, 640 P.2d 304 (1982).

By substantial, it is not meant that the evidence need be uncontradicted. All that is required is that the evidence be of sufficient quantity and probative value that reasonable minds *could* conclude that the verdict of the jury was proper. It is not necessary that the evidence be of such quantity or quality that reasonable minds

must conclude, only that they *could* conclude.

*Id.* at 768, 640 P.2d at 308 (quoting *Mann v. Safeway Stores, Inc.,* 95 Idaho 732, 736, 518 P.2d 1194, 1198 (1974)).

### B. *Anderson* and *Walden.*

In *Anderson,* the insured obtained a judgment by default against the uninsured motorist who caused her injuries. When she tried to recover the amount of the default judgment under her own uninsured motorist policy, the insurance company argued that it was not bound by the default judgment against the uninsured motorist and demanded arbitration pursuant to the insurance policy. Anderson responded by filing a complaint seeking the limits of the uninsured motorist policy's bodily injury and medical payments coverage. Anderson also included a claim for bad faith. The court granted the insurance company's motion to compel arbitration and stayed the proceedings on Anderson's bad faith claim. Following arbitration of the uninsured motorist claim, the bad faith claim continued but was dismissed on summary judgment because the trial judge found that Anderson's uninsured motorist claim was fairly debatable.

Similarly in *Walden,* Walden was struck by an uninsured motorist while sitting in a parked car. She submitted a proof of loss to Nationwide, her uninsured motorist carrier, for the limits of the policy. Nationwide disputed the claim and immediately demanded arbitration, as it was entitled to do under the policy. Rather than comply with the arbitration provision in the contract, Walden filed suit against Nationwide. Nationwide moved to dismiss the complaint because the dispute was subject to arbitration. Walden objected and sought to have Nationwide's motion treated as an application for arbitration and stay of proceedings under I.C. § 7–902. The district court refused to treat the motion as an application for arbitration and declined to stay the proceedings because Walden was the one who would not participate in the arbitration. The district court treated Nationwide's motion as a motion for summary judgment and dismissed. This Court affirmed, stating:

> A term of the policy is that the parties will submit to binding arbitration to determine the amount of damages, if that amount is in dispute. In this case the amount of damages was in dispute. By refusing to designate an arbitrator, Walden was the party who failed to comply with the terms of the policy, not Nationwide. Nationwide was entitled to have the amount of damages determined by arbitration. Nationwide was not in breach of contract and did not act in bad faith in relying on the provisions of the arbitration agreement.

*Walden,* at 20, 951 P.2d at 951.

### C. G & L's failure to demand arbitration prior to filing its complaint.

■ Like the policies at issue in both *Walden* and *Anderson,* the insurance policy in this case provides a mechanism for resolving disputed claims without involving the court. The policy provides: "If we and you disagree on the amount of Net Income and operating expenses or the amount of loss, either may make written demand for an appraisal of the loss." [1] The policy also provides:

**5. Loss Payment.**

We will pay for covered loss within 30 days after we receive the sworn statement of loss, if:

a. You have complied with all of the terms of this Coverage Part; and

b. (1) We have reached agreement with you on the amount of loss; or

(2) An appraisal award has been made.

Despite these provisions, neither party made a demand for arbitration prior to the lawsuit. Providence contends that it had no duty to pay under the policy until G & L complied with all provisions of the policy including

---

1. We note that the policy references appraisal rather than arbitration. But, we do not decide what practical distinction, if any, there may be between an appraisal and arbitration. The district court *granted* Providence's motion with regard to arbitration, finding that "The parties' contract includes an enforceable and valid arbitration clause. The Court finds that Providence did not waive its right to request arbitration." G & L did not appeal from the order granting arbitration.

arbitration, and that it cannot be held liable for bad faith for not paying money that was not yet due.

■ We agree that an insured may not proceed with a lawsuit for proceeds under a policy in the face of a valid clause requiring arbitration, without first complying with the arbitration provision. We disagree, however, with Providence's apparent contention that an insured who fails to demand arbitration is forever precluded, as a matter of law, from recovering damages caused by an insurer's intentional and unreasonable delay of the settlement process.

In this case, G & L was not allowed to proceed with its claim for proceeds under the policy because there had been no arbitration award. As did the insurer in *Anderson,* Providence requested and received an order compelling "arbitration" and staying the proceedings. Also as in *Anderson,* the litigation on G & L's bad faith claim continued only after completion of the "arbitration." However, Anderson's bad faith claim was ultimately dismissed on summary judgment because there was no evidence of bad faith. Consequently, *Anderson* never addressed the issue presented by this case. In *Walden,* the district court also dismissed the insured's bad faith claim on summary judgment because Nationwide did not act in bad faith in that case simply by demanding arbitration. Therefore, like *Anderson, Walden* never addressed the effect of the *insured's* failure to demand arbitration.

In contrast to both *Anderson* and *Walden,* G & L's bad faith claim was allowed to proceed to the jury, and the jury found sufficient evidence to conclude that Providence acted in bad faith by intentionally delaying the settlement of G & L's claims. The question raised by this case, therefore, is whether the insured's failure to demand arbitration before filing a complaint precludes a bad faith claim for unreasonable delay in the settlement process.

■ Unlike the duty to pay, the obligation to act in good faith is not triggered by agreement regarding the loss or arbitration. The duty to act in good faith exists at all times during the settlement process. Furthermore, a claim for breach of the obligation of good faith and fair dealing is independent of a technical breach of the obligation to pay.

> '[E]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.' ... Such a duty is beyond that which the policy imposes by itself—the duty to defend, settle, and pay—but is a duty imposed by law on an insurer to act fairly and in good faith in discharging its contractual responsibilities.

*White v. Unigard Mut. Ins. Co.,* 112 Idaho 94, 96, 730 P.2d 1014, 1016 (1986). The tort recognized by this Court in *White* is grounded upon the breach of this independent implied contractual duty of good faith. It cannot be properly regarded as a claim for tortious breach of the explicit terms of the contract such as the duty to pay.

> [T]he bad faith conduct by one party to a contract toward another is a tort separate and apart from a breach of contract per se .... It is a separate intentional wrong, which results from a breach of the relationship established by contract.

*Id.,* at 97, 730 P.2d at 1017 (quoting *Anderson v. Continental Ins. Co.,* 85 Wis.2d 675, 271 N.W.2d 368 (1978)). Thus, the fact that the insurer's duty to pay has not yet been triggered by agreement or arbitration does not as a matter of law shield the insurer from liability for intentionally and unreasonably delaying the settlement process.

■ The availability of arbitration if the insured believes the insurer is delaying settlement does not change the insurer's obligation to proceed with the evaluation of the claim in good faith.

> Although the insured is not without remedies if he disagrees with the insurer, the very invocation of those remedies detracts significantly from the protection or security which was the object of the transaction. Thus, the insurance contract and the relationship it creates contain more than the company's bare promise to pay certain claims when forced to do so; implicit in the contract and the relationship is the insurer's obligation to play fairly with its insured.

*Id.* at 98, 730 P.2d at 1018 (quoting *Rawlings v. Apodaca,* 151 Ariz. 149, 726 P.2d 565 (1986)).

Providence cannot escape liability for bad faith as a matter of law solely because G & L did not demand arbitration. The ultimate question to be answered in any bad faith claim is whether the insurer " 'intentionally and unreasonably denie[d] or delay[ed] payment' on a claim, and in the process harm[ed] the claimant in such a way not fully compensable at contract." *Id.* The insurer cannot use the fact that the insured has not yet demanded arbitration, by itself, to simply sit back and wait, paying claims only after the insured demands and receives an arbitration award.

### D. Providence's reliance upon its rights under the policy.

■ For similar reasons, Providence cannot rely solely upon its contractual rights to request documentation and arbitrate disputed claims. Providence argues that there is no purpose to arbitration clauses or other conditions of coverage if an insured can assert that reliance upon those provisions is bad faith. Providence contends that it had a right to demand arbitration and to request financial documentation necessary to adjust the business loss, without fear of breaching its contract or committing bad faith. We recognize that an insurer cannot be held in bad faith for standing upon its rights under the policy. However, Providence did not have a right to arbitrate all claims as a matter of course or to demand documentation that was unnecessary under the circumstances. Moreover, Providence did have an obligation to treat G & L fairly and to investigate and settle G & L's claim with reasonable diligence and good faith. The existence of a right to the arbitration of genuinely disputed claims and to request necessary documentation of claims cannot shield an insurer who demands arbitration of claims that are not genuinely disputed or requests unnecessary documentation merely to delay the settlement process. It should also be noted that Providence did not demand arbitration until after G & L's complaint was filed, and G & L's bad faith claim was not based upon a demand for arbitration.

### E. Substantial and competent evidence.

■ Providence's assertions that G & L did not demand arbitration and was slow to provide necessary financial information were presented to the jury. The jury considered these arguments, yet found that Providence intentionally and unreasonably delayed in settling G & L's claim and that G & L went out of business because of the delay. We find substantial although conflicting evidence in the record to support the jury's verdict, and consequently will not disturb the verdict on appeal even if we may have reached a different conclusion were we called upon to decide it in the first instance.

### 2. Any errors with regard to the negligence instructions in this case were harmless.

The district court instructed the jury that:

In order for the plaintiffs to recover for breach of the duty of good faith and fair dealing, they must prove each of the following propositions:

1. The defendant, Providence Washington Insurance Company, was unreasonable in the handling of the plaintiff's insurance claim;

2. The defendant's conduct was either intentional; *or as a result of negligence;*

(emphasis added).

The negligence language in this instruction is based upon this Court's decision in *Reynolds v. American Hardware Mut. Ins.* 115 Idaho 362, 766 P.2d 1243 (1988), which held:

We extend the *White v. Unigard* holding, and distinguish it to the extent that it may be construed to be inconsistent with today's decision, to cover negligent, as well as intentional denials or delays of the payment of insurance claims. We hold that a properly pled cause of action can be sustained against an insurer which negligently fails to make a timely settlement of an insurance claim.

*Id.* at 365, 766 P.2d at 1247. Although the court below instructed the jury that it could find Providence liable for negligent conduct, the court refused to instruct the jury to make

a special finding on G & L's comparative negligence.

Providence asks this court to overrule *Reynolds*. Alternatively, Providence contends that if *Reynolds* remains viable, I.C. § 6–801 mandates that a comparative negligence instruction be given whenever there is evidence of negligence by the insured.

■ We are not persuaded that Providence's challenge to *Reynolds* is well taken. To the extent that *Reynolds* may be considered as creating a claim for damages arising from negligent bad faith, and should therefore be overruled for that reason, we believe Providence misreads *Reynolds*. *Reynolds* was not an intentional bad faith case, it was purely a negligence case. *Reynolds* did not create a claim for negligent bad faith but merely holds that, in addition to intentional bad faith in unreasonably denying or delaying the payment of insurance claims, there can be a cause of action to recover damages predicated on negligence where an insurer fails to settle an insurance claim within a reasonable time and the insurer's negligence or lack of diligence in that regard is a proximate cause of the plaintiff's loss.

■ Furthermore, we conclude that the district court did not commit reversible error in refusing to instruct the jury on the principle of comparative negligence. It is clear from the result in this case that the jury did not find negligence, but instead found Providence had engaged in intentional conduct.

The jury was instructed that:

In order to prove that the defendant Providence Washington Insurance Company intentionally breached the duty of good faith and fair dealing, the plaintiffs do not have to establish that the defendant acted with an evil or fraudulent intent, or with actual malice towards the plaintiffs. It is sufficient if it is proven that the defendant was aware of the nature, content, and probable consequences of its actions and that it acted with conscious disregard of such consequences.

The jury was also instructed that punitive damages might be appropriate "[i]f you find that the defendant's acts ... were an extreme deviation from reasonable standards of conduct and that the defendant's acts were malicious, fraudulent, oppressive, wanton or outrageous conduct ...." Because the jury awarded punitive damages, it necessarily concluded that Providence's conduct was not only intentional, but also "malicious, fraudulent, oppressive, wanton or outrageous." Consequently, any errors with regard to the negligence instructions in this case were harmless.

We also find no merit in Providence's suggestion that the jury may have viewed Providence's conduct more harshly because of the absence of a comparative negligence instruction. A comparative negligence instruction merely instructs the jury to make a specific finding regarding the percentage of negligence allocated to each party. The jury was free to consider the actions of both G & L and Providence when evaluating whether Providence acted intentionally, and Providence was allowed to present what evidence it had of G & L's conduct.

### 3. Speculative Damages.

■ G & L's expert valued the business using a method based upon the capitalization of future income. Compensatory damages for lost profits and future earnings must be shown with a reasonable certainty. *Hummer v. Evans*, 129 Idaho 274, 280, 923 P.2d 981, 987 (1996). Damage awards based upon speculation and conjecture will not be allowed. *Rindlisbaker v. Wilson*, 95 Idaho 752, 519 P.2d 421 (1974).

■ Providence argues that the damage calculations that G & L presented to the jury are based upon uncertain contingencies and are therefore not reasonably certain. At the time of the fire, G & L had only recently begun showing signs of profitability. Despite an apparent turnaround in G & L's business—which was attributable to new management policies and a favorable contract with TJ International—the company had significant problems with long-term debt, and needed to move its operations to a new, larger facility. Providence contends that the district court improperly allowed testimony that G & L would have obtained a needed infusion of capital and been able to move its

operations if not for the fire. Gwen Lund testified that her husband, Howard, had already agreed to contribute up to $400,000 to meet the long-term debt obligations. The district court also allowed testimony about a lease that G & L had been negotiating, but had not yet executed. The valuation provided by G & L's expert assumed that G & L would have received the needed capital and been able to obtain the new lease. Providence contends that because G & L's damage calculations depended upon the happening of these uncertain contingencies, the damages were too speculative.

Providence relies upon *Rindlisbaker* and *Circle C Ranch v. Jayo*, 104 Idaho 353, 659 P.2d 107 (1983). In *Rindlisbaker*, the court allowed testimony that "Rindlisbaker was going to purchase the ranch from his father in two years and that they were going to convert hay ground into pasture ground and run approximately four hundred head of cattle on the ranch." This Court stated that:

> At the time of the accident, respondent owned only 40 head of cattle himself and was marketing with his father only 187 head annually. Respondent and his father had not entered into any lease arrangement for the winter rangeland and had taken no action to convert hay ground into pasture ground. Additionally, the evidence concerning respondent's intent to purchase the ranch shows little more than a bare intent. This evidence was too speculative to be admissible as proof of lost future earnings.

*Rindlisbaker*, at 761, 519 P.2d at 430. In *Circle C Ranch*, this Court held that the district court did not err by holding that damages based upon the prospective sublease in that case were too speculative.

Although G & L had not yet executed a lease for their new building, we conclude that both *Rindlisbaker* and *Circle C Ranch* are distinguishable from this case. In this case, there was not simply a bare intent to obtain a new lease. G & L presented testimony that it had been negotiating for the new lease, and although a written lease had not yet been executed G & L had made a $10,000 deposit. Gwen Lund's testimony presents a question of credibility rather than specula-

tion. On redirect examination, Gwen Lund testified:

Q: While he's here, can you just tell us whether or not you're absolutely certain that you and your husband, Howard, had the ability and had committed to loan up to 300, $400,000 to G & L?

A: Yes. Yes, we had the money and Howard was committed to taking care of it.

Although the value of G & L's business was not shown with absolute certainty, we cannot say that the jury's verdict was based upon speculation and conjecture.

### 4. Unfair Claims Settlement Practices Act.

 The district court allowed G & L's expert on insurance regulation, Wayne Soward, to utilize Idaho's Unfair Claims Settlement Practices Act to show insurance industry standard practices in Idaho. Providence argues that this was improper because it impermissibly allowed a private cause of action based upon a violation of the Act. *See, White v. Unigard* (holding that there is no private cause of action under the Unfair Claims Settlement Practices Act). This same argument was raised by the insurer in *Walston v. Monumental Life Ins. Co.*, 129 Idaho 211, 923 P.2d 456 (1996), and rejected by this Court. We hold today, as we did in *Walston*, that Soward's testimony "did not relate to [G & L] bringing a claim under the Act. The testimony was presented to show insurance industry standards and was properly admitted for that purpose."

### 5. Any error in the damage instruction was harmless.

 The jury was instructed that:

If you decide for the plaintiff on the question of liability with respect to its claim that the defendant breached its duty of good faith and fair dealing, you must then fix the amount of money which will reasonably and fairly compensate the defendant for any of the following elements of damage proved by the evidence to have been proximately caused by the negligence and/or wrongful conduct of the defendant:

1. Any decrease in the value of the business after the conduct causing the business loss, as compared to the value of the business before such conduct; or,

2. A reasonable amount which will compensate plaintiff for all actual detriment proximately caused by the defendant's wrongful conduct; *and,*

3. The plaintiff's loss of profits resulting from defendant's breach of contract and the present cash value of net profits reasonably certain to be lost in the future by reason of that breach.

(Emphasis added.)

Providence contends that the word "and" connecting paragraphs two and three invited the jury to award a double recovery because the loss of profits referenced in paragraph three would also be included within the "all actual detriment" referenced in paragraph two. Providence has not established however, that the jury in fact granted G & L a double recovery in this case. The only evidence presented by G & L concerned lost profits and the jury awarded approximately half of the damages asked for by G & L. It is unlikely that a jury would be confused or misled by this instruction into granting a double recovery and we find no evidence that the jury granted a double recovery in this case. Thus, even if the instruction was improper, we conclude that Providence was not harmed.

6. **The district court did not abuse its discretion by allowing the jury to consider punitive damages.**

 Providence contends that the jury was improperly allowed to consider punitive damages because punitive damages are not appropriate in a negligence case. We agree that punitive damages are not allowable for negligence, however the jury in this case was not instructed that it could award punitive damages for negligence. The jury was instructed that it could award damages "[i]f you find that the defendant's acts ... were an extreme deviation from reasonable standards of conduct and that the defendant's acts were malicious, fraudulent, oppressive, wanton or outrageous conduct ...."

 Providence also alleges that the district court did not make specific findings as required under I.C. § 6–1604 that would allow the jury to consider evidence of punitive damages. I.C. § 6–1604 provides that:

In all civil actions in which punitive damages are permitted, no claim for damages shall be filed containing a prayer for relief seeking punitive damages. However, a party may, pursuant to a pretrial motion and after hearing before the court, amend the pleadings to include a prayer for relief seeking punitive damages. The court shall allow the motion to amend the pleadings if the moving party establishes at such hearing a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages.

I.C. § 6–1604(2). In this case, G & L moved to amend its pleadings before trial pursuant to I.C. § 6–1604 to allege a claim for punitive damages. The district court held a hearing and issued an order allowing G & L to amend its complaint. The district court also ordered that the trial be bifurcated with the punitive damages to be tried later; however, in the midst of the trial the judge changed his approach and decided to allow the punitive damages evidence to be presented during the trial. Providence argues that the district court did not make the proper findings under § 6–1604 when it reversed itself in the middle of trial. Providence's argument has no merit because the district court had already held a hearing pursuant to § 6–1604 prior to trial, and determined that G & L would be allowed to present punitive damages. There was no need to hold a new hearing following the court's decision to allow the unified trial.

### CONCLUSION

For the reasons stated above, the judgment is affirmed. Costs to respondent, G & L. No attorney fees are awarded.

Chief Justice TROUT, Justice SILAK and Justice JOHNSON, PRO TEM, concur.

Justice SCHROEDER, concurring in result.

In light of the issues as framed, I concur in the result reached by the Court without joining in the analysis of *Reynolds v. American Hardware Mut. Ins.*, 115 Idaho 362, 766 P.2d 1243 (1988).