HORTON, J.,
dissenting.
I respectfully dissent from the Court’s conclusion that Shelton’s claim abated upon her death. I do so because I believe that her claim of breach of contract stated a claim upon which relief can be granted, and therefore, the cause of action did not abate.
This Court has long recognized that the duties owed in tort cases are those imposed by law, and do not have their origins in the explicit terms of the parties’ contract.[2] Recently, in Weinstein v. Prudential Property and Cas. Ins. Co., 149 Idaho 299, 233 P.3d 1221 (2010), this Court addressed an earlier decision in Inland Group of Companies, Inc. v. Providence Washington Insurance Co., 133 Idaho 249, 985 P.2d 674 (1999). In Inland Group, the Court upheld an award of punitive damages for the tort of bad faith where the insurance company had failed to timely pay the undisputed portion of a claim. Id. at 259, 985 P.2d at 684. Although the insurance policy at issue contained an arbitration provision relating to disputed claims, this Court rejected the insurer’s claim that it had no duty to pay under the policy until the insured complied with all provisions of the policy including arbitration. Id. at 255-56, 985 P.2d at 680-81. Weinstein explained the reasons for this decision as follows:
In rejecting that argument we stated, “The duty to act in good faith exists at all *624 times during the settlement process. Furthermore, a claim for breach of the obligation of good faith and fair dealing is independent of a technical breach of the obligation to pay.” [Inland Group, 133 Idaho] at 255, 985 P.2d at 680. We added, “The tort recognized by this Court in White [v. Unigard Mutual Insurance Co., 112 Idaho 94, 730 P.2d 1014 (1986)] is grounded upon the breach of this independent implied contractual duty of good faith. It cannot be properly regarded as a claim for tortious breach of the explicit terms of the contract such as the duty to pay.” 133 Idaho at 255, 985 P.2d at 680.
149 Idaho at 322, 233 P.3d at 1244 (emphasis added).
In Baccus v. Ameripride Services, Inc., 145 Idaho 346, 179 P.3d 309 (2008), this Court explained the interplay between contract and tort actions in similar terms:
In addition, “[i]n order for a cause of action to arise in tort, Claimants must establish the breach of a tort duty, separate and apart from any duty allegedly created by the contract.” Vickers [v. Hanover Constr. Co., Inc., 125 Idaho 832, 835, 875 P.2d 929, 932 (1994)]. Furthermore, “negligent conduct and breach of contract are two distinct theories of recovery. Ordinarily, breach of contract is not a tort, although a contract may create the circumstances for the commission of a tort.” Just’s Inc. v. Arrington Constr. Co., 99 Idaho 462, 468, 583 P.2d 997, 1003 (1978). But, “[t]he mere negligent breach or nonperformance of a contract will not sustain an action sounding in tort, in the absence of a liability imposed by law independent of that arising out of the contract itself.” Steiner Corp. v. Am. Dist. Tel., 106 Idaho 787, 790, 683 P.2d 435, 438 (1984) (internal quotations omitted).
145 Idaho at 350, 179 P.3d at 313 (emphasis added).
In Baccus, Justice Warren Jones continued, emphasizing that tort duties arise by operation of law, whereas contractual duties arise from the mutual assumption of rights and duties by the contracting parties:
In Just’s, this Court explained the difference between the purposes of contract law and tort law thusly:
The fundamental difference between tort and contract lies in the nature of the interests protected. Tort actions are created to protect the interest in freedom from various kinds of harm. The duties of conduct which give rise to them are imposed by the law, and are based primarily upon social policy, and not necessarily upon the will or intention of the parties.... Contract actions are created to protect the interest in having promises performed. Contract obligations are imposed because of conduct of the parties manifesting consent, and are owed only to the specific individuals named in the contract.
Just’s, 99 Idaho at 468, 583 P.2d at 1003 (quoting W. Prosser, Handbook of the Law of Torts § 92 at 613 (4th ed.1971)).
Id. at 350-511, 179 P.3d at 313-14 (emphasis added).
In Hudson v. Cobbs, 118 Idaho 474, 797 P.2d 1322 (1990), this Court similarly emphasized that the source of a duty in tort is not found within the terms of the parties’ contract. The Court quoted its earlier decision in Carroll v. United Steelworkers of America, 107 Idaho 717, 719, 692 P.2d 361, 363 (1984), which held that “an alleged failure to perform a contractual obligation is not actionable in tort.... ‘To found an action in tort, there must be a breach of duty apart from non-performance of a contract.’ ” 118 Idaho at 478, 797 P.2d at 1326 (internal citations omitted, emphasis original). Even prior to Carroll, this Court repeatedly made similar pronouncements. See Steiner Corp., 106 Idaho at 790-91, 683 P.2d at 438-39 (“a clear duty must be shown to exist by operation of law, separate and apart from the contractual duty.... ”); Taylor v. Herbold, 94 Idaho 133, 138, 483 P.2d 664, 669 (1971) (“Ordinarily, a breach of contract is not a tort. A contract may, however, create a state of things which furnishes the occasion for a tort.”); Wallace v. Hartford Fire Ins. Co., 31 Idaho 481, 486-87, 174 P. 1009, 1010 (1918) (“to determine the form in which redress must be sought, it is necessary to ascertain source or origin. If *625 it be found that right or duty was created independent of the consent of the parties concerned, the action is in tort; if because of such consent, it is on contract.”).
In Harrigfeld v. Hancock, 140 Idaho 134, 137, 90 P.3d 884, 887 (2004), this Court stated that “[a]n attorney’s duty arises out of the contract between the attorney and his or her client.” We have recently reiterated this language from Harrigfeld in Soignier v. Fletcher, 151 Idaho 322, 326, 256 P.3d 730, 734 (2011). However, the holding in Harrig-feld was not based upon the express terms of the attorney-client contract; rather, the Court noted that the existence of a duty was a question of law. 140 Idaho at 138, 90 P.3d at 888. In determining whether a duty would be imposed by operation of law, the Court then conducted a balance-of-the-harms test. Id.
I do not think that Hayward v. Valley Vista Care Corp., 136 Idaho 342, 33 P.3d 816 (2001), discussed by the majority, provides guidance for resolution of the instant appeal. Although the Hayward Court addressed the holding in Trimming v. Howard, 52 Idaho 412, 16 P.2d 661 (1932), its decision that plaintiff was precluded from bringing a contract action against a health care provider was based upon an application of I.C. § 6-1012. Id. at 350, 33 P.3d at 824. In Trimming, this Court did make the following statement, which sounds much like the holding of the majority in the present case: “Respondent is not arraigned for breach of contract, but for delinquencies incidental to its performance. As alleged, these are the very foundation of the action, and, if true, constituted nothing but malpractice. The gist of a malpractice action is negligence, not a breach of the contract of employment.” 52 Idaho at 416, 16 P.2d at 662.
However, this statement followed a traditional statement, along the lines previously discussed, distinguishing the sources of duties imposed in tort and contract cases:
The complaint primarily alleges that a contract for treatment was entered into between the parties. So far so good. But, in the performance of that contract, respondent impliedly contracted that he would exercise ordinary and reasonable care (48 C.J. 1115, par. 101), the [sic] which is another way of saying that such duty is imposed by law. Denning v. State, 123 Cal. 316, 55 P. 1000, 1002 [ (1899) ], enunciating as follows:
The contract of employment has nothing whatever to do with the liability, except to create a duty on the part of the employer,-a duty not expressed in the contract, and for the violation of which the contract of employment furnishes no rule or standard for the estimation of damages. Nor is the action grounded upon the contract, but upon the duty springing from the relation created by it, viz., that of employer and employee, and under the old system of pleading was always classed as an action ex de-licto.
Id. at 415, 16 P.2d at 662 (emphasis added).
Based upon the foregoing, I believe that the body of law discussed both in the majority opinion and in this dissent recognizes that the duties imposed by operation of law in malpractice actions flow from the relationship created by the contractual relationship of the parties, not the contract itself.
In this case, Owens specifically undertook and promised that “[attorneys shall represent Client in said matter and do all things necessary, appropriate, or advisable, in regard thereto.” There is no suggestion that Owens was incompetent or otherwise lacked the capacity to contract. There is likewise no suggestion that he was unaware of the nature of his undertaking (after all, it was his firm’s form contract), or that he did not voluntarily enter into the agreement, or that there was no consideration for his promise. In the absence of such circumstances as might permit avoidance of the terms of an express contract, I am unaware of any prior instance where this Court has determined that a party may be relieved of liability for the breach of an express term of a written contract on the basis that the “wrong theory” was advanced by plaintiff.
The majority expresses its concern that “[a] holding to the contrary would create a per se breach of contract action in every legal malpractice action.” I would first note *626 that this is a gross overstatement. The position I espouse only applies in instances involving express contractual undertakings. In this case, no one forced Owens to enter a contract prescribing the manner in which he would represent his client. Had he not elected to identify the manner in which he would perform his services, his duty to his client would have been imposed by law, this action would sound in tort, and I would be joining with the majority.
I, too, have concern for the result of this appeal. There is the very real concern that the decision of this Court will reinforce the perception, shared by many in our society, that courts will go out of their way in order to protect members of the bar.[3] My position, which I believe to be well-grounded in existing law, simply recognizes that lawyers do not hold a special place in society that insulates them from the type of liability that any other party to a contract would face.
For these reasons, I would affirm the decision of the district court and hold that Shelton stated a claim for breach of contract upon which relief can be granted. As the majority correctly notes, a claim arising ex contractu survives the death of the claimant. Kloepfer v. Forch, 32 Idaho 415, 418, 184 P. 477, 477 (1919). Accordingly, I dissent from the Court’s determination that the action abated and the case should be remanded for dismissal.

. In this regard, I take issue with the majority's reliance on Johnson v. Jones, 103 Idaho 702, 652 P.2d 650 (1982), for the proposition that "[t]he contract basis of legal malpractice actions is the failure to perform obligations directly specified in the written contract.” However, Johnson cannot be said to hold that an attorney’s negligent breach of the express terms of a written contract is only actionable in tort because in Johnson there was no written contract. Rather, the Court in Johnson noted that it was "undisputed that [the attorney] never spoke with the [plaintiffs] or affirmatively stated that he would represent them.” Id. at 703, 652 P.2d at 651. Indeed, the Court noted that "the earnest money agreement is admittedly vague as to what the attorney’s fees that the parties were to 'share equally in' would purchase_” Id. at 704 n. 2, 652 P.2d at 652 n. 2. The Court concluded that the attorney "was retained solely to draw up a contract of sale.” Id.

. This perception may well evaporate when trial courts begin to instruct juries in legal malpractice cases that the attorney's duty is to "do all things necessary, appropriate or advisable, in regard” to the subject of representation. Based upon the majority's statement that this is "not materially different from the standard applied in the legal malpractice claim,” it appears that such an instruction would be appropriate.